BEFORE THE UNITED STATES

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: BABY FOOD MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2997 |

PLAINTIFF CHARLOTTE WILLOUGHBY, LUDMILA GULKAROV, LAURA PEEK, JODI SMITH AND JANINE TORRENCE RESPONSE TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Willoughby, Gulkarov, Peek, Smith, and Torrence (collectively the "Willoughby Group"), submit this response in opposition to Plaintiffs' Motion for Transfer of Actions to the Eastern District of New York Pursuant to 28 U.S.C. § 1407 and supporting brief ("Motion"). ECF 1, 1-1. The Motion requests transfer of all actions listed in the Motion, as well as all "tag along" cases, to the United States District Court for the Eastern District of New York.

## BACKGROUND

The Motion seeks transfer of all pending actions against numerous baby food manufacturers that concern the presence (or risk) of heavy metals (the "Actions").[1]  There are seven different baby food manufacturers at issue in the Actions: Hain Celestial Group, Inc. (Earth's

---

[1] The majority of cases are class actions concerning false, deceptive or misleading advertising related claims but there are also individual personal injury cases at issue.

549738.1

Best Baby Food) ("Hain"); Nurture, Inc. (Happy Baby and Happy Tot) ("Nurture"); Beech-Nut Nutrition Company ("Beech-Nut"); Gerber Products Co. ("Gerber"); Plum PBC and its parent company, Campbell Soup Company ("Plum"); Walmart, Inc. ("Walmart"); and Northern Castle Partners (Sprout) ("Northern Castle") (collectively, "Defendants").[2] Each of the Defendants has its own independent headquarters and manufacturing plant. Each of the Defendants sells its own independent line of baby food. Each of the Defendants has its own suppliers, testing practices, and quality control procedures (or lack thereof) for monitoring the presence or risk of heavy metals at issue (cadmium, arsenic, lead, and mercury). Each of the Defendants has different packaging and advertising. And each of the Defendants competes with the others. As such, the factual differences will overwhelm any common factual questions.

Multidistrict Litigation ("MDL") involving multiple defendants is rare, especially as of late. Plaintiffs anticipate based on conferences with counsel for various Defendants that they do not favor a multi-defendant MDL. That position is not surprising based on the factual differences described above, among other reasons. Instead, Defendants have indicated that they support alternatives to centralization—specifically single-defendant cases in the district court where each defendant is currently headquartered or maintains its principal place of business, utilizing stipulations and/or motions to transfer to achieve efficiencies.[3]

Because the conduct of each of the Defendants differed at every stage of the manufacturing and advertising process – from the selection of sources for ingredients and additives, to the testing

---

[2] The overwhelming majority of the class action cases are brought against only one specific baby food manufacturer. Of the sixty-one active cases on the list before this Court, fifty-one are against a single defendant and only ten are against multiple defendants.

[3] With respect to Gerber, there is a dispute over whether the cases should be centralized in Gerber's current or former headquarters district. There is also a dispute as to whether Plum's principal place of business is in California at this time.

of ingredients and the final products, to quality control processes, to marketing and labeling, to responding to public and private inquiries about the safety of the products—the factual discovery and resulting legal proceedings will wildly vary by defendant. Accordingly, the Actions should not be consolidated into one MDL as the factual and legal questions for each defendant involve different products, different advertising, different witnesses, and individualized discovery of each defendants' internal documents concerning suppliers, testing and quality control procedures.

## ARGUMENT

The Panel is authorized to transfer "civil actions involving one or more common questions of fact" that "are pending in different districts" to a single district "for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). But transfer and centralization are not appropriate unless: (1) the civil actions involve "common questions of fact"; (2) transfer will be "for the convenience of the parties and witnesses"; and (3) transfer will "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Movants bear the "burden of demonstrating the need for centralization." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig. ("In re Best Buy")*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011). "Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met." *In re Highway Acc. Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975). The Panel must also consider the interests of all parties and must consider multidistrict litigation as a whole in light of the purposes of the statute providing for transfer for coordinated or consolidated pretrial proceedings. *See, e.g., In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 229 (J.P.M.L. 1978). The Panel will deny transfer and consolidation when it is unlikely to produce significant efficiencies and where there is considerable individualized discovery. *See, e.g., In re Kohl's Tel. Consumer Prot. Act (TCPA) Litigation*, 220 F.Supp.3d 1363 (J.P.M.L. 2016).

I.  **CENTRALIZATION IS INAPPROPRIATE AND WILL NOT RESULT IN JUDICIAL EFFICIENCY**

A.  **A Multi-Defendant MDL Does Not Meet the Commonality Requirement Due to Individualized Factual Issues and Discovery Requirements**

The commonality requirement demands more than superficial similarity. The Panel has emphasized that "*numerosity* of actions" will not support centralization without "sufficient common questions of fact to warrant Section 1407 transfer." *In re Not-for-Profit Hosps./Uninsured Patients Litig.,* 341 F. Supp. 2d 1354, 1355 (J.P.M.L. 2004). Common issues must "predominate *over* individual factual issues." *In re Westinghouse Elec. Corp. Emp't Discrimination Litig.,* 438 F. Supp. 937, 938 (J.P.M.L. 1977); *see also In re Pharmacy Benefit Plan Adm'rs Pricing Litig.,* 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer where "unique questions of fact predominate over any common questions").

The parties who filed the Motion ("Movants") have not demonstrated that the commonality requirement is met, such that creation of a multi-defendant MDL involving multiple baby food manufacturers selling completely different products with unique labeling and advertising would be appropriate. Each defendant manufactures, markets, and distributes its own baby food brand using its own manufacturing processes, suppliers, and quality control procedures. Each defendant has its own labels with its own advertising slogans, campaigns, and representations. And each defendant has its own method for determining prices charged to consumers. Thus, while the issues of law may overlap in some ways, the factual similarities are superficial in that they begin and end with the fact that all Defendants manufacture baby food alleged to contain heavy metals. *See* ECF 1-1 at 8. Movants' suggestion that transfer will prevent duplicative pretrial conferences is vague and ignores the practical realities. *Id.* at 9-10. A more careful look reveals that the vast majority of the matters the Motion asks this Court to consolidate involve a single defendant—and most of those cases already are centralizing in each defendant's headquarter district. Thus, the relief sought

by the Motion would serve to complicate these matters, upend coordination per defendant that is already well-underway, and make future coordination of the schedules of the parties and their counsel more difficult.

The Motion glosses over the facts that will actually be at issue in discovery and other pretrial proceedings. Specifically, the claims against each defendant will largely rise or fall depending on facts specific to that defendant, including, but certainly not limited to:

- What steps, if any, the defendant took to investigate and select its suppliers (who vary) and to assess the inclusion or risk of heavy metals;

- How the defendant selected and used vitamins and other additives to reduce or eliminate the risks associated with heavy metals in its products;

- Whether and to what extent the defendant tested ingredients for the presence of heavy metals, and what such tests showed;

- Whether and to what extent the defendant tested its final products for the presence of heavy metals, and what such tests revealed ;

- What the defendant knew about the extent of the presence of heavy metals in its products, and when did it know;

- What strategies the defendant adopted in advertising and labeling its baby food products, and how, if at all, this changed over time;

- What, if any, action the defendant took in response to outside studies relating to heavy metals in its baby food products;

- What actions the defendant took when dealing with regulatory agencies, including the Food and Drug Administration and the Environmental

>   Protection Agency, concerning heavy metals in its baby food products and ingredients;
>
> - What actions, if any, the defendant took in connection with, or in response to, the Healthy Babies Bright Futures 2019 baby food report;
>
> - What actions the defendant took in connection with, or in response to, the Congressional investigation of baby food products.

Instead of presenting actual factual commonalities that would support creation of a multi-defendant MDL, the Motion uses generalities and surface representations designed to create an impression that the cases are all the same. However, like other requests recently rejected by this Court, non-specific statements are insufficient. *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1355 (J.P.M.L. 2020) (denying request for consolidation when movants relied only "on broad similarities among the actions to support their request for centralization"). Here, Movants' argument in favor of "just and efficient conduct" makes only vague assertions that "courts will rule on the common factual and legal issues these cases" and "[d]uplicative discovery cannot be avoided if the cases proceed separately." ECF 1-1 at 11.

It is unclear what duplicative witness testimony the Motion seeks to avoid and what factual issues are common among the Defendants—indeed, the Motion does not specify either. The underlying allegations relating to the presence or risk of heavy metals in baby food products seem to be Movants' hook, but the same types of allegations are surely not enough to justify a multi-defendant MDL, particularly here where none of the Actions alleges a conspiracy, or any other collective or coordinated conduct, among the Defendants. As an example, there is no conceivable relevance of Beech-Nut's testing and marketing of its products in a consumer (or personal injury) case alleging claims against Gerber. "Thus, there is little potential for common discovery across

the litigation." *In re COVID-19 Bus. Interruption Prot. Ins. Litig.* ("*Bus. Interruption*"), 482 F. Supp. 3d 1360, 1362 (J.P.M.L. 2020).

Here, while "the actions undoubtedly allege similar policies and practices…[,] there is no common or predominant defendant across all actions." *In re Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1337 (J.P.M.L. 2020). And "[w]here multiple actions are pending in a single district, the parties can seek to organize the actions before a single judge, as already has occurred in" the Northern District of New York, the Eastern District of New York, the Southern District of New York, and the Northern District of California. *Id.* at 1338. "Put simply, the MDL that [M]ovants request entails very few common questions of fact, which are outweighed by the substantial convenience and efficiency challenges posed by managing a litigation involving the entire [baby food] industry." *Bus. Interruption*, 482 F. Supp. 3d at 1363.

Given the different underlying facts (and witnesses) relating to each defendant, likely differences in legal or corporate strategies for dealing with challenges to its baby food products, and the different locations of each defendant and potential witnesses, joining the cases against all manufacturers in a single proceeding will cause unnecessary complexity for the judiciary and litigants, unavoidable delay, will not be convenient for the parties or witnesses, and will not "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.

Under these circumstances, the Willoughby Group respectfully submits that a multi-defendant MDL is inappropriate here and that the parties should continue to coordinate the separate transfers of the cases against each defendant to the location where the defendant is headquartered, which will promote the just and efficient conduct of this litigation. Those venues are where many key fact witnesses are located, where key decisions were made or approved, and where the

Defendants are incontrovertibly subject to general personal jurisdiction for all claims brought on behalf of purchasers in all fifty states.

>   B.   **A Multi-Defendant MDL Would Not Serve the Convenience of the Parties and Witnesses and Would Not Promote the Just and Efficient Conduct of the Actions.**

This Panel often considers the second and third elements of the Section 1407 inquiry in tandem, finding that centralization may "serve the convenience of the parties and witnesses" and "promote the just and efficient conduct of the litigation" where it would accomplish such efficiencies as "eliminat[ing] duplicative discovery," "prevent[ing] inconsistent pretrial rulings," and "conserv[ing] the resources of the parties, their counsel and the judiciary." *In re Airline Baggage Fee Antitrust Litig.,* 655 F. Supp. 2d 1362, 1362-63 (J.P.M.L. 2009). The mere presence of "some factual overlap," is insufficient to support centralization where the pending actions may "proceed in an orderly manner" in their original jurisdictions. *In re Joel Snider,* MDL No. 2934, 437 F. Supp. 3d 1371, 1371-1372 (J.P.M.L. 2020).

Since each defendant sold different baby foods, has its own suppliers, testing procedures and quality assurance controls, and uses entirely different labels and marketing campaigns, among other differences, discovery will be individualized as to each defendant. Each defendant will have separate witnesses (employees), and these witnesses are likely located where the defendant is headquartered, not in one centralized location or area. This alone supports a denial of the Motion here. *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (denying initial motion for centralization of actions against multiple defendants because "a significant amount of the discovery in these actions appears almost certain to be defendant-specific").

The potential for some "overlapping" discovery (*e.g.* potential common third-parties involved in the Congressional investigation) can be addressed through alternative means and does

not warrant centralization. Litigants have many mechanisms available to coordinate these limited areas without transferring cases. For example, the parties could agree to share discovery requests and responses through stipulations under Federal Rule of Civil Procedure 29 and informal discovery procedures as necessary and appropriate. *See* Manual for Complex Litigation § 11.423 (4th ed. 2004). The parties could also agree to use master interrogatories or coordinate third party responses so that no party is required to answer duplicative requests. *See id.* at § 11.464; *see also In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer actions when "[a]lternatives to transfer exist that may minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings"). Parties involved in litigation across the country will have every incentive to achieve efficiencies through discovery wherever possible.[4]

Movants' speculation that efficiencies can only be achieved through a multi-defendant MDL is just that—speculation—and does not address the concrete reasons why the proposed multi-defendant MDL does not satisfy the requirements under 28 U.S.C. § 1407.

### C. Consolidation of Cases in the Jurisdiction Where Each Defendant is Headquartered is More Efficient than a Multi-Defendant MDL.

The Panel has held that "centralization under Section 1407 should be the last solution after considered review of all other options," including transfer pursuant to Section 1404 and the first-to-file rule. *In re Best Buy,* 804 F. Supp. 2d at 1378; *see In re SLB Enter. Rico Litig.,* 412 F. Supp. 3d 1350, 1352 (J.P.M.L. 2019) (identifying stay of litigation under "the first-to-file rule" as

---

[4] It is also noteworthy that each defendant is a competitor and each defendant will likely take the position that many of the relevant documents and testimony as to a defendants' suppliers, testing practices, and quality control procedures are confidential and/or trade secrets. Confidentiality concerns, therefore, would create potential inefficiencies and complicate protective orders, omnibus briefing, and the sealing of evidence and hearings where such evidence would be discussed.

549738.1                                    9

alternative to MDL consolidation); *In re Dickey's Barbecue Rests. Inc., Customer Data Sec. Breach Litig.*, MDL No. 2983, 2021 WL 405657, at *2 (J.P.M.L. Feb. 4, 2021) ("centralization under Section 1407 should be the last solution after considered review of all other options.") (quotations omitted). Here, the Actions can be more efficiently managed through consolidation of cases by each defendant, in an appropriate court in the district where each defendant is headquartered. In fact, steps have already been taken toward that end.[5]

The Panel stated on its ECF entry announcing the schedule in these proceedings that "[i]n [the responsive] briefs, the parties should address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." *In re: Baby Food Mktg., Sales Practices and Prods. Liab. Litig.*, MDL No. 2997, ECF No. 3 (J.P.M.L. Mar. 9, 2021). Steps to pursue alternatives have been taken in cases against each of the Defendants, as discussed below.

**Beech-Nut Nutrition Company**

Thirteen consumer class cases against Beech-Nut have been filed in the Northern District of New York where Beech-Nut is headquartered, all of which have been related under Case No. 1:21-cv-00133. Twelve cases of these cases are against Beech-Nut alone, and the thirteenth alleges claims against Beech-Nut and Gerber. Two additional similar cases have been filed (against Beech-Nut alone)—one in the Middle District of Florida and one in the Eastern District of California.

Plaintiffs in the cases filed in the Northern District of New York stipulated to consolidation and agreed that any future filed cases arising out of similar allegations that are filed in or

---

[5] The Willoughby Group disputes the proper headquarters for Plum PBC is New Jersey and instead maintain Plum was headquartered in California during the relevant time period.

transferred to the Northern District of New York would be consolidated as well, with no objection from defendant Beech-Nut. The stipulation was entered on March 19, 2021, and responsive pleadings are due on the later of sixty days following the filing of a consolidated amended complaint or May 15, 2021. There are twelve additional cases pending nationwide naming Beech-Nut and the other Defendants collectively, and counsel for Beech-Nut has stated its preference to sever the claims against it from those cases and transfer and consolidate them with the lead action in the Northern District of New York.[6]

**Hain Celestial Group**

Sixteen cases have been filed against Hain Celestial Group ("Hain") in the Eastern District of New York where Hain is headquartered, and a motion to consolidate those cases has been fully briefed. Other cases (with multiple Defendants) have been filed in the Northern District of Illinois, the Northern District of California, the Eastern District of New York, the District of Kansas, and the District of New Jersey. Hain is expected to seek transfer and severance of the claims against it in those multi-defendant cases in favor of the Eastern District of New York.

**Nurture, Inc.**

Ten cases against defendant Nurture, Inc. ("Nurture") are pending in the Southern District of New York, where Nurture is headquartered. These cases are related, and a motion for consolidation has been fully briefed. Other cases against Nurture and the other Defendants have been filed in other district courts around the country, including the Northern District of California, the Eastern District of New York, the District of Kansas, and the District of New Jersey. Plaintiffs

---

[6] In a multi-defendant action pending in the Northern District of Illinois, Beech-Nut, along with Hain, Gerber, and Nurture, moved to sever and transfer the claims against them to their relevant home jurisdictions. *Garces et al. v. Gerber Prods. Co., et al.*, Case No. 1:21-cv-00719, Dkts. 36-37.

expect that Nurture will seek severance and transfer of the similar claims against it, in order that they may be consolidated with the mass of cases in the Southern District of New York.

**Gerber**

Multiple cases against defendant Gerber Products Company have been filed and are pending in the District of New Jersey and the Eastern District of Virginia. Cases are also pending in the District of Minnesota, Middle District of Florida, Northern District of Illinois, and the Central District of California, as well as state courts in Florida and Texas. A motion to consolidate cases in the District of New Jersey has been filed and has been opposed by certain parties. The opposition argues that the cases pending in New Jersey should be transferred and consolidated with the first-filed cases in the Eastern District of Virginia, which is where Gerber is headquartered, and where multiple cases are also pending and consolidation has already occurred as to some of the actions. Gerber is also named as a defendant along with other baby food manufacturers in cases in the District of Kansas, the Eastern District of New York, the Northern District of California, and the District of New Jersey.

**Plum PBC**

Ten class action cases against Plum, PBC ("Plum") or Plum and/or parent Campbell Soup Company have been filed. Six of those are pending in the Northern District of California, where Plum is headquartered, two of which have been consolidated under Case No. 21-cv-00913, and the others have been related and also assigned to Judge Gonzalez Rogers. The Plaintiffs in Consolidated Case No. 21-cv-00913 have served written discovery requests. Two personal injury cases have been related (but not consolidated) to the consolidated action in the Northern District of California. Four cases are pending in the District of New Jersey. Plum is also named as a defendant, along with the other Defendants, in cases in the District of Kansas, the Northern District of California, and the Eastern District of New York.

With respect to cases against each defendant, the parties have already demonstrated an ability to quickly confer and coordinate consolidation of a number of cases. Defendants have not been served with the complaints in every pending action, but once service is complete, additional consolidation efforts can move forward. Such efforts may include severance of claims by Defendants and transfer of severed claims to the court where consolidation efforts are already underway.

## II. IF THIS PANEL FINDS THAT A MULTI-DEFENDANT MDL IS APPROPRIATE, THE ACTIONS SHOULD BE CENTRALIZED IN THE NORTHERN DISTRICT OF CALIFORNIA

Though the Willoughby Group opposes a multi-defendant MDL, should this Panel elect to create a multi-defendant MDL, the Willoughby Group contends that the Northern District of California would be the most appropriate venue given the current cases before Judge Gonzalez Rogers that include both consumer class actions and two of the personal injury cases.

The United States District Court for the Northern District of California would be the most appropriate venue for transfer of any multi-defendant MDL: (1) it is a district court experienced in managing multidistrict litigation; (2) both consumer class actions and personal injury cases are pending there and assigned to Judge Gonzalez Rogers;[7] and (3) it is conveniently located in a major metropolitan area with ready access from every region in the country.

At this moment, there is no one jurisdiction where the litigation is further advanced than another so there is no advantage to one specific venue based on the procedure posture of a pending case.  However, Judge Gonzalez Rogers has proactively related both the consumer protection cases and the personal injury cases pending in that jurisdiction.  The Northern District of California has

---

[7] The Willoughby Group supports the Interested Party Response to Motion for Transfer of Actions by Plaintiffs in *AG et al. v. Plum, PBC et al.*, Case No. 3:21-cv-01600-YGR request that the Personal Injury cases should not be consolidated in any MDL and in the alternative, any such MDL should be transferred to the Northern District of California.

the desired judicial experience, capacity, and resources to manage MDL proceedings in general and complex antitrust class actions in particular. *See In re Int'l Air Transp. Surcharge Antitrust Litig.*, 460 F. Supp. 2d 1377, 1379 (J.P.M.L. 2006) (noting that the Northern District of California is "well equipped with the resources that this complex antitrust docket is likely to require"); *In re Transpac. Passenger Air Transp. Antitrust Litig.*, 536 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008) (transferring antitrust MDL to the Northern District of California); *In re Lithium Ion Batteries Antitrust Litig.*, MDL 2420, Case No. 4:13-md-02420 (N.D. Cal. 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, Case No. 3:07-md-01827 (N.D. Cal. 2007); *In re Capacitors Antitrust Litig. (No. III)*, 285 F. Supp. 3d 1353 (J.P.M.L. 2017); *In re Xyrem (Sodium Oxybate) Antitrust Litigation*, MDL No. 2966, Case No. 5:20-md-02966, 2020 WL 7382272 (J.P.M.L. Dec. 16, 2020); *see also In re Juul Labs, Inc. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019) (consolidating ten actions to the Northern District of California where panel "notified of more than forty potentially-related actions").

The JPML has also considered whether a district is "an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require." *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005); *see also In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) (same). The Northern District of California easily meets this criterion. Oakland and the surrounding areas is a major metropolitan area and travel hub, with public transportation and two large airports available, ample local travel and lodging options, and the business resources needed for complex litigation. Accordingly, this factor, too, weighs in favor of transferring the Actions to the Northern District of California in the event that the Panel finds a multi-defendant MDL appropriate.

### III. CONCLUSION

For all of the foregoing reasons, the Willoughby Group respectfully requests that this Panel: (1) deny the Motion; or (2) alternatively, if the Panel concludes that a multi-defendant MDL is warranted, transfer the Actions to the Northern District of California and to Judge Gonzalez Rogers.

Dated: April 13, 2021  LOCKRIDGE GRINDAL NAUEN P.L.L.P.

s/ Rebecca A. Peterson

ROBERT K. SHELQUIST
REBECCA A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

LITE DEPALMA GREENBERG, LLC
Joseph DePalma
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
             scruzhodge@litedepalma.com

CUNEO GILBERT & LADUCA, LLP
Charles Laduca
Katherine Van Dyck
C. William Frick
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:(202) 789-3960
Facsimile:  (202) 789-1813
E-mail: charles@cuneolaw.com
             kvandyck@cuneolaw.com

*Attorneys for Plaintiffs Charlotte Willoughby, Ludmila Gulkarov, Laura Peek, Jodi Smith and Janine Torrence*